**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JODIE PIERCE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CPS SOLUTIONS, LLC.,<br><br>        Defendant. | Case No.: 2:25-cv-449<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Jodie Pierce ("Plaintiff") brings this Class Action Complaint against Defendant CPS Solutions, LLC., ("CPS Solutions" or "Defendant"), on behalf of herself individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters:

### I.      INTRODUCTION

1.     This class action arises out of the recent data security incident and data breach that was perpetrated against Defendant (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") of Plaintiff and other current and former patients of Defendant, the putative class members ("Class"). This Data Breach occurred between December 2, 2024 to December 4, 2024.

2.     The Private Information compromised in the Data Breach included certain personal or protected health information of Defendant's patients, including Plaintiff. According to the notice letter Defendant mailed to Plaintiff (Exhibit A), the Data Breach affected the following

information: "full name, date of birth, and address: (2) health insurance information (Ssuchas a member/group ID number or Medicaid/Medicare number); and/or (3) medical information (such as medical record number, clinical information, provider information, diagnosis or treatment information, or prescription information such as medication name)."[1]

3.      According to Defendant, an "unauthorized third party" "accessed and acquired" the data from Defendant's computer systems. In other words, the cybercriminals intentionally targeted Defendant for the highly sensitive Private Information it stores on its computer network, attacked the insufficiently secured network, then exfiltrated highly sensitive PII and PHI, including Social Security numbers. As a result, the Private Information of Plaintiff(s) and Class Members remains in the hands of those cybercriminals.

4.      The Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which they were entrusted for healthcare services and/or treatment.

5.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was subjected to unauthorized access by an unknown third party and precisely what type of information was accessed.

6.      Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a

---

[1] The "Notice of Data Breach" attached hereto as Exhibit A.

known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

7. Defendant, through its employees, disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Defendant also failed to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the Data Breach.

8. In addition, Defendant's employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant's employees (presumably in the IT department) properly monitored its property, it would have discovered the intrusion sooner.

9. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

10. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11.     Because of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

12.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

14.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

15.     Accordingly, Plaintiff sues Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) breach of implied contract, (iii) negligence *per se*, (iv) breach of fiduciary duty; and (v) unjust enrichment.

## II.     **PARTIES**

16.     Plaintiff Jodie Pierce is and at all times mentioned herein was an individual citizen of New York, residing in the city of Bradford.

17.     Defendant CPS Solutions, LLC, is a limited liability company organized under the laws of the State of Ohio with its principal place of business located at 655 Metro Place South, Suite 450, Dublin Ohio 43017.

18.     Defendant CPS Solutions, LLC's registered agent is CT Corporation System located at 4400 Easton Cmns Suite 125, Columbus, Ohio 43219.

### III.    JURISDICTION AND VENUE

19.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant, namely Plaintiff, who is a citizen of New York, to establish minimal diversity.

20.    This Court has general personal jurisdiction over Defendant because its headquarters and principal place of business is located in Ohio, it regularly conducts business in Ohio, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from Ohio.

21.    Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendant conducts business in this District and because a substantial part of the acts or omissions giving rise to this action occurred within this District.

### IV.    FACTUAL ALLEGATIONS

*DEFENDANT'S BUSINESS*

22.    Defendant CPS Solutions is an Ohio-based corporation that provides pharmacy practices, services, to over 800 healthcare facilities all across the country. [2]

23.    In the ordinary course of receiving healthcare services from Defendant, each patient must provide (and Plaintiff did provide) Defendant with sensitive, personal, and private information, such as his or her:

- names
- address;
- telephone number;
- date of birth;
- Social Security number;

---

[2] CPS Solutions LLC, "About Us" (last accessed April 23, 2025).

- medical history;
- health records;
- insurance information;
- and other sensitive information

24.     Defendant also creates and stores medical records and other protected health information for its patients, including records of treatments and diagnoses.

25.     Upon information and belief, Defendant's HIPAA Privacy Policy is provided to every patient prior to receiving treatment and upon request.

26.     Defendant agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

27.     The patient and employee information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

***THE DATA BREACH***

28.     A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

29.     On or around April 9, 2025, Defendant began notifying former patients about the Data Breach through mailed notices. Defendant's notice letter to Plaintiff states in part:

> **What Happened?** On December 4, 2024, CPS Solutions discovered that an unauthorized third party gained access to one CPS Solutions employee's 0365 business email account. Upon discovery, CPS Solutions immediately forced a password reset, disabled the email account, and took other appropriate steps to prevent further access. The email account was secured that same day and an investigation was launched to determine the potential scope and impact. Our findings indicate that an unauthorized third-party was able to access and remove data from the account, which may have contained limited personal information, between December 2 to 4, 2024. On January 24, 2025, CPS Solutions completed a comprehensive review which identified all customers and individuals potentially affected by this incident

6

and what information was involved. Based on the results of that review, we formally notified your health care provider of this incident on February 10, 2025.

**What Information Was Involved?** The personal information involved may have included: (1) full name, date of birth, and address; (2) health insurance information (such as member/group ID number or Medicaid/Medicare number); and/or (3) medical information (such as a medical record number, clinical information, provider information, diagnosis or treatment information, or prescription information such as medication name). Not all data elements were involved for every potentially affected individual.

30.     The U.S. Department of Health and Human Services requires, "[i]f a breach of unsecured protected health information affects *500 or more individuals*, a covered entity must notify the Secretary of the breach without unreasonable delay and in *no case later than 60 calendar days* from the discovery of the breach."[3] Further, if "the number of individuals affected by a breach is uncertain at the time of submission, the covered entity should provide an estimate," and later provide an addendum or correction to HHS.[4]

31.     To be clear – there are numerous issues with CPS Solutions' Data Breach, but the deficiencies in the Data Breach notification letter exacerbate the circumstances for victims of the Data Breach: (1) CPS Solutions waited over four months to notify Plaintiff and Class Members of the Data Breach; (2) CPS Solutions fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that CPS Solutions continues to maintain is secure; and (3) CPS Solutions fails to state how the breach itself occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

---

[3] U.S. Department of Health and Human Services, *Submitting Notice of a Breach to the Secretary* (Feb. 27, 2023) https://www.hhs.gov/hipaa/for-professionals/breach-notification/breach-reporting/index.html (last visited April 23, 2025) (emphasis added).
[4] *Id.*

32. Moreover, in its Notice Letter, Defendant failed to specify whether it undertook any efforts to contact the Class Members whose data was accessed and acquired in the Data Breach to inquire whether any of the Class Members suffered misuse of their data, whether Class Members should report their misuse to Defendant, and whether Defendant set up any mechanism for Class Members to report any misuse of their data.

33. According to Defendant's report to the U.S. Department of Health and Human Services Office for Civil Rights, 500 individuals were affected by the Data Breach as it relates to CPS Solutions.[5]

34. Defendant began notifying victims of the Data Breach on April 9, 2025—more than four months after Defendant discovered the suspicious activity on its computer network.

35. Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

36. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

37. Defendant's data security obligations were particularly important given the substantial increase in Data Breaches in the healthcare industry preceding the date of the breach.

38. In 2023, a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[6] Of the 2023 recorded

---

[5] U.S. Department of Health and Human Services Office for Civil Rights, Notice to the Secretary of HHS Breach of Unsecured Protected Health Information, *available at* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (*last visited* April 23, 2025).

[6] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited April 23, 2025).

data breaches, 809 of them, or 25%, were in the medical or healthcare industry.[7] The 809 reported

breaches reported in 2023 exposed nearly 56 million sensitive records, compared to only 343

breaches that exposed just over 28 million sensitive records in 2022.[8]

39.     Data breaches such as the one experienced by Defendant have become so notorious

that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to

potential targets, so they are aware of, and prepared for, a potential attack.

40.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare

organizations experienced cyberattacks in one year's time.[9]

41.     Therefore, the increase in such attacks, and attendant risk of future attacks, was

widely known to the public and to anyone in Defendant's industry, including Defendant.

### DEFENDANT FAILS TO COMPLY WITH FTC GUIDELINES

42.     The Federal Trade Commission ("FTC") has promulgated many guides for

businesses which show how important it is to implement reasonable data security practices.

According to the FTC, the need for data security should shape all business decision-making.

43.     In 2016, the FTC updated its publication, *Protecting Personal Information: A

Guide for Business*, which established cyber-security guidelines for businesses. The guidelines

note that businesses should protect the personal information that they keep; properly dispose of

personal information that is no longer needed; encrypt information stored on computer networks;

understand their network's vulnerabilities; and implement policies to correct any security

---

[7] *Id.*

[8] *Id.* at 11, Fig.3.

[9] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack, Security Magazine* (Nov. 23, 2020), *available at* https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited April 23, 2025).

problems.[10] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[11]

44.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

45.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

46.     These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

---

[10] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited April 23, 2025).
[11] *Id.*

47.     Defendant failed to properly implement basic data security practices.

48.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

49.     Defendant was always fully aware of its obligation to protect the PII and PHI of its patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS

50.     As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

51.     Several best practices have been identified that a minimum should be implemented by healthcare providers like Defendant, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

52.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

53.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02,

PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

54.      These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***DEFENDANT'S CONDUCT VIOLATES HIPAA AND REVEALS ITS INSUFFICIENT DATA SECURITY***

55.      HIPAA requires covered entities such as Defendant to protect against reasonably anticipated threats to the security of sensitive patient health information.

56.      Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

57.      Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a) (1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

58.      A Data Breach such as the one Defendant experienced is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. *See* 45 C.F.R. 164.402 (Defining "Breach" as "the acquisition, access, use, or disclosure of

protected health information in a manner not permitted under [the HIPAA Privacy Rule] which compromises the security or privacy of the protected health information.").

59. Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate it failed to meet standards mandated by HIPAA regulations.

## V. **DEFENDANT'S BREACH**

60. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b. Failing to adequately protect patients' Private Information;

    c. Failing to properly monitor its own data security systems for existing intrusions;

    d. Failing to ensure that vendors with access to Defendant's protected health data employed reasonable security procedures;

    e. Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    f. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    g. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

    h. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    i. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j. Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k. Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

l. Failing to train all members of Defendant's workforce effectively on the policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

m. Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

61. As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing malware, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

62. Plaintiff and Class Members now face an increased risk of fraud and identity theft.

***DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT***

63. Data Breaches such as the one experienced by Defendant's patients are especially problematic because of the disruption they cause to the daily lives of victims affected by the attack.

64. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[12]

---

[12] U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited April 23, 2025) ("GAO Report").

14

65.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (possibly an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[13]

66.     Identity thieves use stolen personal information such as Social Security numbers for various crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

67.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

68.     Theft of Private Information is gravely serious. PII/PHI is a valuable property right.[14] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

---

[13] Federal Trade Commission, *What To Do Right Away* (2024), *available at* https://www.identitytheft.gov/Steps (last visited April 23, 2025).

[14] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

69. Theft of PHI is also gravely serious: The FTC cautions that a data thief may use stolen personal information "to get medical care, see a doctor, get prescription drugs, buy medical devices, or submit claims with your insurance provider." Moreover, "A thief that uses your personal information to get medical care might also use it in other situations."[15] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

70. It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report at p. 29.

71. Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[15] *See* Federal Trade Commission, *What to know About Medical Identity Theft*, *available at* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last visited April 23, 2025).

72.     There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

73.     Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[16] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

74.     For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for more credit lines.[17] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[18] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

75.     It is also hard to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual

---

[16] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), *available at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited April 23, 2025).
[17] Social Security Administration, *Identity Theft and Your Social Security Number* (2018), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 23, 2025).
[18] *Id* at 4.

misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

76.     Healthcare data, as one would expect, demands an exceptionally high price on the black market. The National Association of Healthcare Access Management reports, "[p]ersonal medical data is said to be more than ten times as valuable as credit card information."[20]

77.     Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016—the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $300 and up.[21]

78.     In recent years, the medical industry has experienced a disproportionally higher number of data theft events than other industries. Defendant therefore knew or should have known this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

## VI.     PLAINTIFF'S EXPERIENCE

79.     Plaintiff Jodie Pierce is and at all times mentioned herein was an individual citizen of New York, residing in the city of Bradford.

---

[19] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (February 9, 2015), *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited April 23, 2025).
[20] Laurie Zabel, *The Value of Personal Medical Information: Protecting Against Data Breaches*, NAHAM Connections, *available at* https://www.naham.org/page/ConnectionsThe-Value-of-Personal-Medical-Information (last visited April 23, 2025).
[21] Paul Ducklin, *FBI "ransomware warning" for healthcare is a warning for everyone!*, Sophos (Oct. 29, 2020) *available at* https://news.sophos.com/en-us/2020/10/29/fbi-ransomware-warning-for-healthcare-is-a-warning-for-everyone/ (last visited April 23, 2025).

80. Plaintiff provided Defendant with her sensitive PII and PHI to receive healthcare services from Defendant.

81. Plaintiff became aware that the data she provided to Defendant had been exposed in a data breach when Defendant sent her the notice letter attached hereto as Exhibit A.

82. Plaintiff is careful about sharing her sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

83. Plaintiff stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her sensitive online accounts.

84. Had Plaintiff been aware that Defendant's computer systems were not secure, she would not have entrusted her personal data to Defendant.

85. Because of the Data Breach, Defendant advised Plaintiff to take certain steps to protect her Private Information and otherwise mitigate her damages.

86. Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring her accounts to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. This time was spent at Defendant's direction by way of the Data Breach notice where Defendant recommended that Plaintiff mitigate her damages by, among other things, monitoring her accounts for fraudulent activity.

87. Even with the best response, the harm caused to Plaintiff cannot be undone.

88. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to

Defendant, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

89.     Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

90.     Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches

## VII.    PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

91.     To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered 24 months of inadequate credit monitoring services to some victims, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

92.     The 24 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

93.     Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

94.     Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

95.     Plaintiff's Private Information was compromised and exfiltrated by cybercriminals as a direct and proximate result of the Data Breach.

96.     Plaintiff was damaged in that her Private Information is in the hands of cybercriminals.

97.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

98.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

99.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

100.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

101.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

102.  Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

103.  Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

104.  Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

   a.  Finding fraudulent charges;

   b.  Canceling and reissuing credit and debit cards;

   c.  Purchasing credit monitoring and identity theft prevention;

   d.  Addressing their inability to withdraw funds linked to compromised accounts;

   e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

   f.  Placing "freezes" and "alerts" with credit reporting agencies;

   g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

   h.  Contacting financial institutions and closing or modifying financial accounts;

   i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

   j.  Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and

   k.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

105.  Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from

further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

106. Further, because of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

107. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VIII.   CLASS ACTION ALLEGATIONS

108. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

109. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All persons whose Private Information was compromised because of the 2024 Data Breach (the "Class").**

110. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

111. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23 of the Federal Rules of Civil Procedure.

112. <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has reported to the U.S. Department of Health and Human Services that at least 500 individuals were affected by the Data Breach.

113. <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

    b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d. Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

    e. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

    g. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

    h. Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

    i. Whether Defendant's conduct was negligent;

    j. Whether Defendant's conduct was *per se* negligent;

    k. Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

    l. Whether Defendant was unjustly enriched;

m.  Whether Defendant failed to provide notice of the Data Breach promptly; and

n.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

114.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

115.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

116.  <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

117.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

118.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

119.    Likewise, issues that will arise in this case are appropriate for certification under Rule 23 because such issues are common to the Class, the resolution of which would advance matter and the parties' interests therein. Such issues include, but are not limited to:

    a.  Whether Defendant failed to timely notify the public of the Data Breach;

    b.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c.  Whether Defendant's security measures to protect their data systems were reasonable considering best practices recommended by data security experts;

    d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

    f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

120.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## IX.    CAUSES OF ACTION

**FIRST COUNT**
**NEGLIGENCE**
**(On Behalf of Plaintiff and All Class Members)**

121.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

122.    Defendant required Plaintiff and Class Members to submit non-public personal information to obtain healthcare services.

123.    By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

124.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

125.    Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including, but not limited to, HIPAA, as well as common law. Defendant could ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

126.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or

disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all the healthcare information at issue constitutes "protected health information" within the meaning of HIPAA.

127. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

128. Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

129. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to detect timely that Class Members' Private Information had been compromised;

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

g. Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

28

130. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

131. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

132. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

133. Defendant's negligent conduct is ongoing, in that they still hold the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

134. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

135. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

136. When Plaintiff and Class Members provided their Private Information to Defendant in exchange for Defendant's services, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

137. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

138.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, and adhered to industry standards.

139.    Plaintiff and Class Members paid money to Defendant or had money paid on their behalf with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

140.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

141.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

142.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

143.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

144.    As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

145.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

146.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit

to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### THIRD COUNT
### NEGLIGENCE *PER SE*
#### (On Behalf of Plaintiff and All Class Members)

147.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

148.    Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

149.    Under HIPAA, 42 U.S.C. § 1302d, et seq., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

150.    Under HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See definition of encryption at 45 C.F.R. § 164.304.

151.    Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

152.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

153.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

154.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

155.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**FOURTH COUNT**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and All Class Members)**

156.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

157.    Defendant became guardian of Plaintiff's and Class Members' Private Information, creating a special relationship between Defendant and Plaintiff and Class Members.

158.    As such, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Private Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

159.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with its patients, in particular, to keep secure their Private Information.

160.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

161.     Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

162.     Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

163.     As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

a.  actual identity theft;

b.  the compromise, publication, and/or theft of their Private Information;

c.  out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information;

d.  lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

e.  the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession;

f.  future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the rest of the lives of Plaintiff and Class Members; and

g.  the diminished value of Defendant's services they received.

164.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**FIFTH COUNT**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

165.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

166.    Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of contract count above.

167.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

168.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the portion of each payment made that is allocated to data security is known to Defendant.

169.    Plaintiff and Class Members conferred a monetary benefit on Defendant. They bought services from Defendant and/or its agents and in so doing provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and had their Private Information protected with adequate data security.

170.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

171.    Defendant enriched itself by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

172.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

173.     Defendant failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

174.     Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices alleged.

175.     If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

176.     Plaintiff and Class Members have no adequate remedy at law.

177.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

     a.   actual identity theft;

     b.   the loss of the opportunity of how their Private Information is used;

     c.   the compromise, publication, and/or theft of their Private Information;

     d.   out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

     e.   lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

     f.   the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

g. future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

178. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

179. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above seeks the following relief:

a. For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and her counsel to represent the Class, and finding that Plaintiff is a proper representative of the Class requested herein;

b. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c. For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e. Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g. For an award of punitive damages, as allowable by law;

h. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

    i.   Pre- and post-judgment interest on any amounts awarded; and

    j.   Any other relief that this court may deem just and proper.

## XI.    <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.


Dated: April 24, 2025                           Respectfully submitted,

                                              */s/Josh S. Sanford*
                                            Josh Sanford
                                            Ohio Bar No. 2001037
                                            josh@sanfordlawfirm.com
                                          **SANFORD LAW FIRM, PLLC**
                                          Kirkpatrick Plaza
                                          10800 Financial Centre Pkwy, Ste 510
                                          Little Rock, AR 72211
                                          Phone: (501) 221-0088
                                          Fax: (888) 276-3455

                                          Leigh Montgomery*
                                          Texas Bar No. 24052214
                                          lmontgomery@eksm.com
                                          service@eksm.com
                                          **EKSM, LLP**
                                          4200 Montrose Blvd., Suite 200
                                          Houston, Texas 77006
                                          Phone: (888) 350-3931
                                          Fax: (888) 276-3455

                                          **ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

                                          (* denotes pro hac vice forthcoming)